**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ROSARIO AGUILAR, as Representative Of MARYORI M. CONDE and As Personal Representative Of The Estate Of MARYORI M. CONDE,

Plaintiff(s),

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut Corporation; THE CRAWFORD GROUP, INC., a Corporation; SHAUNA MCCORMICK, an individual; and THE ESTATE OF SEAN ST. LOUIS, ELCO ADMINISTRATIVE SERVICES COMPANY, a Missouri Corporation, THE OHIO CASUALTY INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE CO., EAN TRUST, EAN HOLDINGS, LLC,

Defendants.

Case No. 1:25-cv-12395-AK

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE (Dkt. 126)**

## I. INTRODUCTION

The Court's Order to Show Cause (Dkt. 126) requires Plaintiff Rosario Aguilar ("Plaintiff")[1] to address case citations[2] that were apparently both fraudulent and misleading. Plaintiff respectfully submits that the case citation errors at issue satisfy neither prong of that conjunctive standard. They are not fraudulent because every case cited in all three briefs exists. These were case citation errors on real cases, not invented authorities. They are not misleading because every proposition for which a case was cited is legally sound and independently supported. The errors were in the attribution details, not in the substance of the legal arguments advanced. Counsel acknowledges these errors, apologizes to the Court, and takes full responsibility. To the extent the Court's OSC encompasses case citations beyond those that were both fraudulent and misleading, Plaintiff respectfully requests leave to supplement this response.

[1] The OSC is directed at Plaintiff Rosario Aguilar. Plaintiff had no involvement whatsoever in the drafting of any of the three briefs at issue, the selection of any citation, or the use of any research tool. Plaintiff is a Spanish-speaking wrongful death claimant who lost her daughter in a fatal rental car accident and has no legal training. The conduct at issue was entirely that of undersigned pro hac vice counsel in connection with AI-assisted legal research utilizing the highest-grade enterprise version of Claude, developed by Anthropic. On that basis alone, the OSC as directed at Plaintiff should be discharged. No Order to Show Cause was issued as to counsel. Nevertheless, undersigned counsel voluntarily submits this response and the accompanying declaration in order to provide the Court with a complete and candid account of the circumstances, to address the citation issues identified in the OSC, and to demonstrate that the conduct at issue was neither fraudulent nor misleading. Similarly, local counsel Austin Dana had no involvement in arriving at the case citations at issue and his sponsorship of pro hac vice counsel does not extend to the substantive research decisions made in California. To the extent the Court's OSC is construed as directed at counsel rather than Plaintiff, Mr. Dana had no involvement in any of the conduct identified in the OSC and should be afforded the opportunity to respond separately and fully to any inquiry directed at him before any adverse finding is made. As should Mr. Lindemann should an OSC issue as to Counsel.

[2] The OSC (Dkt. 126) does not identify any specific case citations or authority as the basis for the Court's concern. Plaintiff has endeavored to undertake a comprehensive review of all three briefs identified in the OSC and to address in this response all case citations that could be characterized as both fraudulent and misleading. To the extent the Court had a particular citation or citations in mind that are not addressed herein, Plaintiff respectfully requests leave to respond to any such specific citation upon identification by the Court.

## II. THE CASE CITATIONS ARE NEITHER FRAUDULENT NOR MISLEADING

### A. Not Fraudulent: Every Cited Case Is Real

Fraud requires an intentional misrepresentation. No case cited in any of the three briefs, the Opposition to the Motion to Strike (Dkt. 51) or the MTD Oppositions (Dkts. 93 and 97), was invented. Every citation traces to real litigation or a real reported decision. The errors were in attribution: wrong page numbers, wrong reporter abbreviations, wrong court designations, typographical errors in party names, and incorrect WL numbers on real cases. These are scrivener's errors, the precise category of unintended mistakes that courts have long distinguished from deliberate misrepresentation.

Massachusetts Rule of Civil Procedure 60 and its Reporter's Notes recognize that clerical and scrivener's errors, defined to include "misprisions, oversights, omissions, and unintended acts," *citing First National Bank v. National Airlines*, 167 F. Supp. 167 (S.D.N.Y. 1958), are categorically different from substantive legal mistakes and from fraud. The Fourth Circuit similarly held in *Sartin v. McNair Law Firm*, 756 F.3d 259 (4th Cir. 2014), that the category of correctable unintended error extends broadly to unintended ambiguities and omissions in the record. Attribution errors on real cases fall squarely within this category. They are unintended. They are not fraudulent.

### B. Not Misleading: Every Proposition Is Legally Sound

A citation is misleading when it creates a false impression of the state of the law, specifically when it tells the Court that authority exists for a proposition when there is no such authority that does. That is not what occurred here. Every substantive proposition advanced in all three briefs is legally correct and independently supported by verified authority. The case citation errors inadvertently misdirected the Court on where to find the supporting authority not on whether that authority exists.

Specifically: the Rule 12(g) consolidation proposition is correct black-letter law under the plain text of Fed. R. Civ. P. 12(g)(2) itself. The coverage ambiguity and exclusion construction propositions are confirmed by *Dorchester Mut. Ins. Co. v. Krusell*, 485 Mass. 431 (2020), which holds precisely that ambiguities in insurance exclusions are resolved against the insurer with "particular force," that the objectively reasonable insured standard governs, and that the insurer bears the burden of proving an exclusion applies. The proposition that coverage exclusion issues require a complete factual record and are inappropriate for resolution at the pleading stage is confirmed by *Atain Specialty Ins. Co. v. Davester LLC*, No. 19-cv-11634-IT (D. Mass. Feb. 11, 2021). The motion to strike standards cited throughout Dkt. 51 are well-established under Rule 12(f) and confirmed by numerous authorities in this and other districts. Not one of the legal propositions advanced in any of the three briefs is wrong. The Court was never misled about the state of the law. As the *Mata* court itself recognized, "merely incorrect legal statements are not sanctionable under Rule 11(b)(2)." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 462 (S.D.N.Y. 2023) (*quoting Storey v. Cello Holdings*, 347 F.3d 370, 391 (2d Cir. 2003)).

## III. THE SPECIFIC CASE CITATION ERRORS

### A. Opposition to Motion to Strike (Dkt. 51) — Withdrawn

The withdrawn Opposition contained one citation where typographical errors in the party name, reporter, and court designation prevented the case from being located as cited: the citation to *Aoun Specialty Ins. Co. v. Davester Corp.*, 382 F.3d 129, 134 (1st Cir. 2004). The Enterprise Defendants, uncouthly characterizing this citation as a "bastardization," confirmed that the underlying case is real and that the errors were typographical variations on an existing authority, not an invented one, identifying the correct case themselves as *Atain Specialty Ins. Co. v. Davester LLC*, No. 19-CV-11634-IT, 2019 WL 5087338, at *2 (D. Mass. Oct. 10, 2019), which was

subsequently addressed by further Order of the Court, *Atain Specialty Ins. Co. v. Davester LLC*, No. 19-cv-11634-IT (D. Mass. Feb. 11, 2021). That case, a decision from this District by Judge Talwani, was ultimately resolved at summary judgment on a complete factual record, directly supporting the proposition for which it was cited: that coverage exclusion issues require a developed record and are inappropriate for resolution at the pleading stage. The case exists; the proposition is confirmed; the errors were typographical. All citations in the withdrawn Opposition were withdrawn with that filing.[3]

**B. MTD Oppositions (Dkts. 93 and 97) — Operative Briefs**

The case citation errors in the operative MTD Oppositions were substantially more limited. *Atain Specialty Ins. Co. v. Davester LLC* is confirmed at No. 19-cv-11634-IT (D. Mass. Feb. 11, 2021). The citation to *Dorchester Mut. Ins. Co. v. Kohl*, 472 Mass. 116, contained typographical errors in volume, page, and party name; the correct citation is *Dorchester Mut. Ins. Co. v. Krusell*, 485 Mass. 431 (2020), a Supreme Judicial Court decision that directly confirms every coverage ambiguity proposition for which it was cited, including that ambiguities in insurance exclusions are resolved against the insurer with "particular force," that the objectively reasonable insured standard governs, and that the insurer bears the burden of proving an exclusion applies. The citation to *Moore v. GEICO General Insurance Co.* contained two

[3] Several additional citations in the withdrawn Opposition involved real cases with correct case citations, including *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168 (1st Cir. 1995); *Barbour v. Dynamics Research Corp.*, 63 F.3d 32 (1st Cir. 1995); *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49 (1st Cir. 1990); *Henderson v. Bank of N.Y. Mellon*, 322 F.R.D. 432 (D. Mass. 2017); *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996); *J&A Realty v. City of Asbury Park*, 763 F. Supp. 85 (D.N.J. 1991); and *Federal Deposit Insurance Corp. v. Jones*, confirmed by the Enterprise Defendants themselves as "an actual case in the District of Nevada," Dkt. 66 at n.10. These citations involved real cases cited for legally correct propositions, with errors only in WL numbers, page references, or attribution chains. Each underlying case exists. The underlying propositions are sound and independently supported. Because these citations do not fall within the category of citations that are both fraudulent and misleading as contemplated by the OSC, they are not further responded to herein. To the extent the Court's OSC was intended to encompass these citations as well, Plaintiff respectfully requests leave to address them by supplemental response.

typographical errors, "D. Md." for "M.D. Fla." and an incorrect WL number; the correct citation is Case No. 8:13-cv-1569-T-24 AEP (M.D. Fla. June 30, 2014), affirmed at No. 14-13556 (11th Cir. Dec. 14, 2018), a real case involving insurance coverage and permissive driver issues decided at summary judgment as represented. All remaining citations in the operative briefs have been independently verified and are accurate.

**IV. THE APPLICABLE STANDARD DOES NOT SUPPORT SANCTIONS**

Even where a court's inherent authority to sanction is invoked, that authority "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *accord In re Atlantic Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002) (inherent powers "must be exercised with restraint and discretion" and "in a way reasonably suited to the enhancement of the court's processes"). Any sua sponte sanction must be proportionate to the conduct at issue. Sanctions calibrated to deter the deliberate submission of fabricated authority are not proportionate to scrivener's errors on real cases advancing legally correct propositions.

The Advisory Committee Notes to the 1993 amendments to Rule 11 confirm that court-initiated show cause orders "will ordinarily be issued only in situations that are akin to a contempt of court." Fed. R. Civ. P. 11 advisory committee's note (1993). Where a court considers sanctions sua sponte, as here, sanctions "should issue only upon a finding of subjective bad faith." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 462 (S.D.N.Y. 2023) (quoting *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)). The First Circuit applies an objective reasonableness standard to court-initiated Rule 11 proceedings. *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33 (1st Cir. 2005). Case citation errors on real cases advancing correct propositions satisfy neither standard. To the extent fee-shifting is considered, any award must be causally linked to the specific misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

The Enterprise Defendants' citation investigation was undertaken voluntarily before any response obligation arose; the Court had already ruled on the Motion to Strike before the Opposition was withdrawn; and no party was prejudiced in any pending proceeding.

Courts addressing AI-related case citation errors have consistently declined to impose sanctions where counsel was candid and the conduct reflected carelessness rather than bad faith. In *Hall v. Academy Charter School*, No. 2:24-CV-08630-JMW, 2025 WL 2256653 (E.D.N.Y. Aug. 7, 2025), the court declined to impose monetary sanctions where counsel took full responsibility, acknowledged the errors to the Court, and the conduct was the product of carelessness rather than willfulness, expressly finding no bad faith — even though the citations at issue were to entirely nonexistent cases. The court relied on *United States v. Cohen*, 724 F. Supp. 3d 251 (S.D.N.Y. 2024), where sanctions were likewise denied for citations to nonexistent cases because no showing was made that the conduct was generated or submitted in bad faith, notwithstanding a finding that the conduct was "embarrassing and certainly negligent, perhaps even grossly negligent." In *In re Telexfree, LLC*, 2026 WL 412550 (D. Mass. Feb. 13, 2026), this Court similarly declined to impose sanctions for AI-assisted citation errors that were not willful, distinguishing inadvertent errors from the deliberate submission of false authority that constitutes sanctionable bad faith under *Chambers*.

The Enterprise Defendants have cited *Kaufman v. Upton*, No. 25-11550-FDS (D. Mass. Jan. 21, 2026), as supplemental authority. That citation is misleading in two critical respects. First, Judge Saylor did not impose sanctions after issuing an Order to Show Cause. Like *In re Telexfree*, both cases the Enterprise Defendants have cited as persuasive authority denied the very monetary relief they seek here. Second, the referral to the Massachusetts Board of Bar Overseers in *Kaufman* was not driven by citation errors. It was driven primarily by counsel's lack of candor when Judge

Saylor directly inquired by Order whether artificial intelligence had been used in preparing the filings. Attorney Peace's response to the show cause order was not "forthcoming" and "did not address whether and to what extent artificial intelligence was used in the preparation of the responses." *Kaufman*, Dkt. 28 at 1-2. It was that failure of candor to a direct court order inquiry — a direct violation of Mass. R. Prof. Conduct 3.3(a) — that prompted the referral. No comparable conduct is present here. Counsel acknowledged the case citation errors promptly, withdrew the affected filings, and has been fully candid with this Court about the use of AI research tools throughout. The contrast between *Kaufman* and the present case could not be more stark.

The cases imposing sanctions are readily distinguished. They involve citations to entirely nonexistent cases, fabricated quotations from cases that do not exist, or attorneys who made affirmative misrepresentations about their use of AI research tools. *See, e.g., Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (sanctions imposed where attorneys cited nonexistent cases generated by ChatGPT, continued to advocate for them after being put on notice of their nonexistence, and made false statements to the Court including a false vacation claim and a misrepresentation that ChatGPT was merely a supplement to other research when it was the only research performed). None of those circumstances are present here. Every case cited exists. Counsel disclosed AI use and has been fully candid with the Court.

Notably, even in *Mata* itself — the most widely cited AI hallucination sanctions case in the country, involving entirely nonexistent cases, continued advocacy for fake authorities after being put on notice of their nonexistence, and affirmative false statements to the Court — the sanction was limited to a $5,000 fine. The court declined fee-shifting entirely, declined § 1927 sanctions, and applied the principle that "a court should impose the least severe sanctions necessary to achieve the goal." *Mata*, 678 F. Supp. 3d at 466. The bad faith findings in *Mata* rested on the

attorneys' continued advocacy for fake cases after being put on notice, false statements to the Court, and a complete absence of any meaningful research beyond ChatGPT. None of those circumstances are present here. Every case cited exists. Counsel withdrew the affected filing promptly upon learning of the specific issues. No false statements have been made to this Court.

Most recently, in *Gamez v. County of Fresno*, No. 1:26-cv-00297-KES-EPG (E.D. Cal. Apr. 9, 2026), decided just yesterday, the Eastern District of California discharged an order to show cause without imposing any sanctions where counsel used a paid AI legal research tool that he genuinely believed had safeguards against hallucination, did not understand it could generate inaccurate citation information, recognized and apologized for the errors, and committed to ensuring future filings would not contain such issues. The court accepted counsel's representation that he had not completely abdicated his role in preparing the filing and had relied on a tool he genuinely believed to be reliable. The parallels to the present case are direct. Counsel here used the highest-grade enterprise version of Claude — a tool specifically marketed for professional legal settings and genuinely believed to have safeguards against hallucination — as one component of a multi-source research process, under documented illness that prevented final citation verification. If even *Mata* warranted only a $5,000 fine and no fee-shifting for wholly fabricated cases and affirmative misrepresentations, and *Gamez* warranted discharge of the OSC entirely for hallucinated citations to nonexistent cases, the scrivener's errors on real cases presented here warrant discharge of the OSC.

**V. CONCLUSION**

The case citation errors in the withdrawn Opposition and the operative MTD Oppositions were scrivener's errors on real cases advancing legally correct propositions. They were neither fraudulent, because every case exists, nor misleading, because every proposition is sound and

independently supported. This is a complex matter spanning three courts — the Massachusetts Superior Court (No. 2073-CV-00295), the Massachusetts Appeals Court (No. 2025-P-0423), and this Court — with more than 131 docket entries in this Court alone, litigated under the pressures of documented illness and holiday travel that directly contributed to the precise citation verification failures described herein. Counsel disclosed AI use, withdrew the erroneous filing promptly, has verified all citations in the operative briefs, and has implemented citation verification procedures for all future filings in this Court. As the Eastern District of California held just days ago, discharging an OSC without sanctions is appropriate where counsel did not understand that the AI tool used could generate inaccurate information, recognizes and apologizes for the errors, and will ensure future filings do not include these issues. *Gamez v. County of Fresno*, No. 1:26-cv-00297-KES-EPG (E.D. Cal. Apr. 9, 2026). All three of those conditions are fully satisfied here. The OSC should be discharged.

To the extent the Court's OSC was intended to encompass case citations beyond those that are both fraudulent and misleading or anything not addressed in this Response, Plaintiff respectfully requests leave to submit a supplemental response addressing any such additional citations the Court wishes to have addressed.

Respectfully submitted,

PLAINTIFF ROSARIO AGUILAR

By her attorneys

DATED: April 10, 2026

/s/ *Blake J. Lindemann*

Blake J. Lindemann (PHV)
California Bar No. 255747
E-mail: blake@lawbl.com
**LINDEMANN LAW FIRM, APC**
9777 Wilshire Blvd., 4th Floor
Beverly Hills, CA 90212

Telephone No: 310-279-5269

-and-

Austin Dana BBO # 683113
KECHES LAW GROUP, P.C.
101 Dyer Street, Fifth Floor
Providence, RI 02903
Tel: (508) 659-1065
Email: adana@kecheslaw.com

*Attorneys for Plaintiff*

**DECLARATION OF BLAKE J. LINDEMANN IN RESPONSE TO ORDER TO SHOW CAUSE [Doc No. 126]**

I, Blake J. Lindemann, declare as follows:

**I. INTRODUCTION**

1. I submit this declaration in response to the Order to Show Cause issued by this Court on March 19, 2026 [Doc No. 126], with a response deadline of March 27, 2026, which was graciously extended two weeks by the Court. No Order to Show Cause was issued as to counsel. I submit this declaration voluntarily, without compulsion, because I believe the Court is entitled to a complete and candid account of the circumstances giving rise to the case citation errors at issue, and because that account demonstrates that the conduct was neither fraudulent nor misleading. I appear before this Court with full candor and without reservation. I take complete and personal responsibility for the case citation errors that are the subject of this Order. I offer no excuses. I do, however, provide the Court with a complete, honest, and documented account of the circumstances that gave rise to these errors, because those circumstances are directly relevant to the question of culpability and the appropriate, if any, response.

2. This is a complex matter that has been actively litigated across three courts since 2020: the Massachusetts Superior Court, Bristol County (Case No. 2073-CV-00295); the Massachusetts Appeals Court (Case No. 2025-P-0423); and this Court (Case No. 1:25-cv-12395-AK), where the federal docket alone already contains more than 131 entries. The breadth and pace of this litigation, spanning multiple jurisdictions, multiple insurance towers, and multiple co-counsel relationships, provides necessary context for understanding how the case citation errors described herein occurred.

3. I share this Court's high level of concern regarding the ways in which artificial intelligence is affecting the practice of law. The proliferation of AI tools in legal practice presents genuine risks — to the integrity of judicial proceedings, to clients who depend on accurate research, and to the profession itself. We must always strive to use these tools more responsibly. I take seriously my obligation to do so, and I am committed to that principle going forward. The errors described herein do not reflect indifference to those obligations. They reflect a failure of verification that occurred under the specific circumstances described below — circumstances I am fully prepared to explain and to be accountable for.

4. The conduct at issue was not the product of bad faith, deception, or any attempt to mislead this Court. There was no fabrication of authority to support positions that could not otherwise be sustained. There was no knowing submission of false case citations. There was, instead, a failure to cross-check AI-assisted research against primary sources before filing — a failure directly caused by the documented and independently corroborated health circumstances described in this declaration, and not otherwise.

**II. PRIOR CORRECTIVE ACTION — THE CRAWFORD MOTION TO STRIKE OPPOSITION**

5. Before addressing the specific case citation errors identified in Doc No. 126, I wish to place them in the context of prior corrective action taken in this litigation. In November 2025, an Opposition to the Crawford Defendants' Motion to Strike [Doc No. 51] was filed that contained case citation errors. This filing was a procedural motion having nothing to do with the merits of Plaintiff's claims and was filed during the Thanksgiving holiday period when I was traveling. In my haste to file before an extended vacation, I inadvertently filed an incorrect version of the opposition — specifically, a PDF version of prior draft of the

work product rather than the final, verified document. That prior draft contained the citation errors identified in the within Response. Upon my return and after fully evaluating the citation issues, I took prompt action and unconditionally withdrew the Opposition on December 1, 2025, before any Rule 11 motion was filed with the Court. I apologized directly to counsel for the Enterprise Defendants.

6. The safe harbor provision of Rule 11 exists precisely for situations like this — to permit counsel to correct errors without the withdrawal being treated as an admission of sanctionable conduct. I did exactly what the Rule contemplates.

## III. NATURE OF THE CITATION ERRORS IN THE MTD OPPOSITIONS — SCRIVENER'S ERRORS, NOT FABRICATIONS

7. The case citation errors identified in Doc No. 126 relate primarily to the Oppositions to the Defendants' Motions to Dismiss [Doc Nos. 93, 97], filed January 13, 2026. Before addressing each citation individually, the Court's attention is respectfully directed to an important categorical distinction that courts have recognized as dispositive in the sanctions context. Every case cited in the MTD Oppositions is a real case. The errors were in attribution details — wrong page numbers, wrong reporter abbreviations, wrong court designations, and typographical errors in party names. These are scrivener's errors, not fabrications.

8. Almost all the errors are also confined to threshold procedural arguments relating to the standard for dismissal under Rule 12(b)(6) — not to the merits of the underlying coverage dispute. The merits-based sections of the briefs — including the coverage arguments, the permissive user coverage analysis, and the Chapter 176D bad faith framework — relied on

properly cited authority that has not been challenged and remains sound. No party was misled as to the substantive law governing any disputed issue in this case.

9. Massachusetts Rule of Civil Procedure 60 and its Reporter's Notes recognize that clerical and scrivener's errors — defined to include "misprisions, oversights, omissions, and unintended acts," *citing First National Bank v. National Airlines*, 167 F. Supp. 167 (S.D.N.Y. 1958) — are categorically different from substantive legal mistakes and from fraud. The Fourth Circuit held in *Sartin v. McNair Law Firm*, 756 F.3d 259 (4th Cir. 2014), that the category of correctable unintended error extends broadly to unintended ambiguities and omissions in the record. Attribution errors on real cases fall squarely within this category.

A. *Moore v. GEICO General Insurance Co.*

10. The correct citation is *Moore v. GEICO General Insurance Co.*, Case No. 8:13-cv-1569-T-24 AEP (M.D. Fla. June 30, 2014) (Bucklew, J.), a 25-page summary judgment decision subsequently affirmed by the Eleventh Circuit at No. 14-13556 (11th Cir. Dec. 14, 2018). The case exists, involves insurance coverage limits and policy terms in a permissive driver context, was decided at summary judgment, and addresses insurer obligations regarding policy limits and settlement — issues directly relevant to the coverage disputes in this case. The citation contained errors in the court abbreviation ("D. Md." should have been "M.D. Fla.") and the Westlaw number. These are scrivener's errors — wrong reporter information for a real case. It is withdrawn as not material to arguments raised or the outcome of the MTD.

B. *Dorchester Mutual Insurance Co. v. Kohl*

11. Plaintiff concedes that the volume and page number for this citation are incorrect. This is a scrivener's error — the right proposition, wrong citation details. The correct citation is *Dorchester Mut. Ins. Co. v. Krusell*, 485 Mass. 431 (2020), a Supreme Judicial Court decision that directly confirms every coverage ambiguity proposition for which it was cited, including that ambiguities in insurance exclusions are resolved against the insurer with "particular force," that the objectively reasonable insured standard governs, and that the insurer bears the burden of proving an exclusion applies. The citation error does not affect the merits of Plaintiff's arguments, which are independently supported by the authorities cited throughout the MTD Oppositions. It is withdrawn as not material to arguments raised or the outcome of the MTD.

12. In summary: every case cited in the MTD Oppositions was real. The errors were wrong court abbreviations, wrong reporter details, and imprecise attribution of quoted language — all on cases that exist. Not one citation was invented or fabricated. Not one supported a position that could not be sustained on the actual law. Every one has been voluntarily withdrawn.

## IV. HEALTH CIRCUMSTANCES AND INDEPENDENT CORROBORATION

13. At the time the MTD Opposition briefs identified by this Court were prepared and filed, I was suffering from Influenza Type A that persisted for approximately one month. The severity and duration of this illness was not fully anticipated when I sought an extension of time to file the opposition briefs. As reflected in Plaintiff's Assented-To Motion for Extension of Time [Doc No. 90], filed January 6, 2026 — one week before the extended filing deadline — I expressly disclosed to the Court that the extension was necessitated in part by "an unexpected illness and influenza of above-signed counsel." That disclosure was

made contemporaneously, before any citation errors were identified, before this OSC was issued, and before any incentive existed to characterize the illness as more serious than it was. It is therefore independently corroborated by the docket itself. The Court granted that extension on January 8, 2026 [Doc No. 91].

14. My illness did not abate as anticipated during that final week. It persisted through the January 13, 2026 deadline, and I was compelled to make the filings despite remaining seriously ill, in order to comply with the Court-ordered deadline and avoid a default on multiple pending motions to dismiss. I was working with my health seriously compromised, under a hard deadline imposed by the Court, without the ability to coordinate with local counsel Austin Dana — who was unable to reach me during this period — and without the capacity to perform the independent citation verification I would ordinarily apply to every filing. The illness is not an excuse. It is a documented, contemporaneous, and verifiable explanation for a failure that would not otherwise have occurred.

15. As to the earlier Opposition to the Motion to Strike [Doc No. 51], that filing was prepared and filed during the Thanksgiving holiday period while I was traveling. The speed of the filing — completed within hours of the Enterprise Defendants' motion — reflected the pressures of this complex, fast-moving litigation. In my haste to file before an extended vacation, I inadvertently filed an incorrect version of the opposition — specifically, a prior draft of the work product rather than the final, verified document. The errors in that filing were caught upon my return, and the filing was unconditionally withdrawn on December 1, 2025.

## V. AI TOOL DISCLOSURE AND RESEARCH METHODOLOGY

16. I disclose to this Court, fully and voluntarily, that in preparing the filings at issue I utilized

Claude, an AI-assisted legal research and drafting tool developed by Anthropic, specifically the highest-grade enterprise version available, as one component of my research process. I genuinely believed that the enterprise-level version of Claude had safeguards against hallucination that would prevent the generation of inaccurate case citations, and I relied on that belief in connection with my research methodology. My research also included review of sample briefs and pleadings from prior cases involving analogous coverage and bad faith issues, as well as consultation of traditional legal research databases. The case citation errors at issue arose from that multi-source research process. With respect to the Opposition to the Motion to Strike [Doc No. 51], in my haste to file before an extended vacation during the Thanksgiving holiday period, I inadvertently filed an incorrect version of the opposition — specifically, a prior draft of the work product rather than the final, verified document. That prior draft contained the citation errors identified by the Enterprise Defendants. Due to my prolonged Influenza Type A illness at the time of the MTD Oppositions, I was unable to cross-check the citations against primary sources before filing — a verification step I would ordinarily have performed as a matter of course and one that would have caught the scrivener's errors in the real cases cited. Had I known that the enterprise version of Claude could generate inaccurate citation details notwithstanding its enterprise-level design, I would have taken the additional step of performing a complete independent citation verification against additional recognized legal databases before filing, as I now commit to doing in all future filings before this Court.

18. The use of AI as one tool among several — alongside traditional databases, prior case materials, and practitioner resources — reflects the reality of modern legal practice in

complex, fast-moving litigation spanning multiple jurisdictions. The error here was not in using AI as part of that toolkit; it was in failing, due to illness, to apply the same verification discipline to AI-assisted research that I would ordinarily apply to any other research source.

## VI. THE ROLE OF LOCAL COUNSEL

17. Austin Dana of Keches Law Group, P.C. has been cooperative, professional, and diligent throughout this litigation. He played no part in the preparation of the briefs containing the case citation errors, and bears no responsibility for them. During the period in which the January 2026 briefs were being finalized, my illness was at its most severe, and I was largely unreachable. Mr. Dana was unable to coordinate with me regarding the final versions of those filings, which were prepared and submitted by me directly. The absence of that coordination — which would ordinarily have provided an additional layer of review — was itself a consequence of my illness, not of any failure on Mr. Dana's part. His reputation and standing before this Court are entirely unaffected by the errors described herein.

## VII. COUNSEL'S PROFESSIONAL RECORD

18. I have never been sanctioned under Federal Rule of Civil Procedure 11 or any state law equivalent. Discovery sanctions in California, which I have had assessed from time to time, are *not* reportable to the California State Bar and the California Business & Professions Code, whereas other types of sanctions are, and any reference to prior California discovery proceedings in this matter should not be construed otherwise. I have never had my pro hac vice admission revoked in any jurisdiction. I have been admitted pro hac vice and sponsored in numerous federal and state courts across multiple jurisdictions, including Massachusetts, Colorado, Arizona, North Carolina, Florida, and Wisconsin, among others,

and have maintained my standing in each. The case citation errors at issue represent an isolated occurrence arising from the specific documented circumstances described herein, and are not reflective of my professional record or practices.

## VIII. COMMITMENTS GOING FORWARD

19. I commit to this Court the following practices going forward in this and all other matters: (a) every citation to legal authority will be independently verified against a primary source — Westlaw, Lexis, or an official reporter — before any filing is submitted; (b) AI-generated research will be treated as a starting point only, requiring full independent verification before any citation is included in a filing; (c) any use of AI-assisted research will be disclosed in any filing where such disclosure is required by standing order or rule of this Court; and (d) local counsel will be given adequate time and opportunity to review all filings before submission.

## IX. REQUEST REGARDING THIS ORDER TO SHOW CAUSE

20. The OSC is directed at Plaintiff Rosario Aguilar. Plaintiff had no involvement whatsoever in the drafting of any of the three briefs at issue, the selection of any citation, or the use of any research tool. Plaintiff is a Spanish-speaking wrongful death claimant who lost her daughter in a fatal rental car accident and has no legal training. The conduct at issue was entirely that of undersigned pro hac vice counsel in connection with AI-assisted legal research utilizing the highest-grade enterprise version of Claude, developed by Anthropic. On that basis alone, the OSC as directed at Plaintiff should be discharged. Similarly, local counsel Austin Dana had no involvement in arriving at the case citations at issue and his sponsorship of pro hac vice counsel does not extend to the substantive research decisions made in California. To the extent the Court's OSC is construed as directed at counsel rather

than Plaintiff, Mr. Dana respectfully submits that he has proceeded responsibly throughout this litigation, had no involvement in any of the conduct identified in the OSC, and should be afforded the opportunity to respond separately and fully to any inquiry directed at him before any adverse finding is made.

21. Plaintiff respectfully submits that the foregoing declaration, taken together with the record of prompt corrective action following the December 2025 filing, provides a sufficient basis for this Court to discharge the Order to Show Cause without further proceedings. If, however, the Court is not inclined to discharge the Order on the papers, Plaintiff respectfully requests that the Court schedule a brief hearing so that counsel may address any remaining questions or concerns the Court may have. Plaintiff welcomes the opportunity to appear before the Court and respond directly to any inquiry the Court deems appropriate.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 10th day of April, 2026, at Beverly Hills, California.

/s/ *Blake J. Lindemann*
Blake J. Lindemann (PHV)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of April 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the Court's electronic filing system. The document was ready for e-filing on April 10, 2026, but due to a multi-factor authentication error with my CM/ECF account, I was unable to login to login to my CM/ECF account until the morning of April 11, 2026 at approximately 7:30 PST/ 10:30 EST.

*/s/ Blake J. Lindemann*

Blake J. Lindemann