**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROSARIO AGUILAR,<br><br>Plaintiff,<br><br>v.<br><br>THE CRAWFORD GROUP, INC., LIBERTY MUTUAL INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, SHAUNA MCCORMICK, ESTATE OF SEAN ST. LOUIS, ELCO ADMINISTRATIVE SERVICES COMPANY, THE OHIO CASUALTY INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE CO., EAN TRUST, EAN HOLDINGS, LLC,<br><br>Defendants. | Civil Action No. 25-CV-12395-AK |

**MEMORANDUM AND ORDER ON**
**ENTERPRISE DEFENDANTS' MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

Plaintiff Rosario Aguilar, as representative of Mayori M. Conde and as personal representative of the Estate of Mayori M. Conde, initiated the instant action due to a motor vehicle incident resulting in Ms. Conde's death. Plaintiff sued Defendants the Crawford Group, Inc. ("Crawford"), ELCO Administrative Services Company ("ELCO"), EAN Holdings, LLC, EAN Trust (collectively, the "Enterprise Defendants"), several of the Enterprise Defendants' insurers, Shauna McCormick, and the Estate of Sean St. Louis. The Complaint incudes eight counts against the Enterprise Defendants: Declaratory Relief and Indemnity (Count IV); Breach

of Contract (Count V); Violation of Massachusetts General Law ("M.G.L.") Chapter 93A (Count VI); Common Law Fraud and Fraudulent Concealment (Count VII); Violation of M.G.L. ch. 175, § 112C (Count VIII); Violation of M.G.L. ch. 176D (Count IX); Negligent Misrepresentation (Count X); and Fraud on the Court, Pursuant to Rule 60(d) (Count XI). Before the Court is the Enterprise Defendants' Motion to Dismiss [Dkt. 81]. For the following reasons, the Enterprise Defendants' Motion to Dismiss [Dkt. 81] is **GRANTED**.

## I. BACKGROUND

### A. The Underlying Incident

The following facts are taken from the Complaint, unless noted otherwise. This action arises from a motor vehicle incident that occurred on January 17, 2019 ("the Incident"), in which St. Louis collided with the rear of a vehicle in which Ms. Conde was a back-seat passenger. Ms. Conde suffered fatal injuries from the Incident and passed away. The vehicle driven by St. Louis ("the Vehicle") was rented from Enterprise Rent-A-Car of Boston ("Enterprise Boston") by Shauna McCormick. When renting the Vehicle, McCormick purchased a Damage Waiver and Roadside Assistance Protection.

In February 2019, Plaintiff made a written demand for insurance coverage disclosures, seeking coverage for the damage caused by the Incident. On February 5, 2019, an insurance adjuster at Crawford and/or ELCO, Elizabeth Borst, responded to Plaintiff's demand and stated, "[i]n response to your demand for the limits of liability coverage pursuant to M.G.L. c.175, §112C vehicles rented from Enterprise Rent-A-Car Company of Boston d/b/a Enterprise are self-insured and provides proof of financial responsibility through a bond pursuant to M.G.L. c.90 §34A, limits up to 20/40/5[1] (a copy is on file at the Department of Motor Vehicle)" ("the Borst

[1] "20/40/5" refers to coverage up to $20,000 per person, $40,000 per accident, and $5,000 for property damage. This level of coverage was the statutory minimum coverage in Massachusetts at the time of the Incident. M.G.L. ch.

Statement"). Counsel representing Enterprise Boston and Enterprise Holdings allegedly informed the Enterprise Defendants' insurers about Plaintiff's demand.

With their Motion to Dismiss, the Enterprise Defendants provided a copy of Massachusetts Motor Vehicle Liability Bond No. 6169769 ("the Bond") as an exhibit. [Dkt. 82-1].[2] The Bond states "We, Enterprise Rent-A-Car Company of Boston, Inc. and EAN Trust and EAN holdings, LLC as Principal(s) and SAFECO Insurance Company of America as Surety, are bound and obligated to the commonwealth of Massachusetts for the limits of liability as stated in the Massachusetts Automobile Insurance Policy (M.A.I.P.) for the Compulsory Insurance Coverages . . . . The damages that will be paid in performing this agreement will never exceed the limits of liability required by Coverages Parts 1, 2, 3, 4, of the (M.A.I.P.). If the Principle is unable to perform in accordance with this agreement the Surety agrees to perform." [Id.]. Plaintiff alleges that, in the Borst Statement, the Enterprise Defendants failed to disclose additional insurance that covers the Incident.

### B. State Court Proceeding

On May 7, 2020, Plaintiff brought an action in Massachusetts Superior Court against Enterprise Boston, Enterprise Holdings, Inc., McCormick, and the driver of the Vehicle ("the State Proceeding"). [Dkts. 70-1[3]; 45 ¶ 27]. Plaintiff brought seven causes of action against Enterprise Boston and Enterprise Holdings: wanton and reckless conduct resulting in death,

---

90, §§ 34A-34R (West 1988). Since the Incident, effective July 1, 2025, mandatory coverage increased to $25,000 per person, $50,000 per accident, and $30,000 for property damage. M.G.L. ch. 90, §§ 34A-34R (West 2025).

[2] Because Plaintiff refers to the Bond throughout the Complaint, and Plaintiff's factual asserts are based upon the Bond, the Court may review the Bond at the motion to dismiss phase. Rivera v. Kress Stores of Puerto Rico, Inc., 30 F.4th 98, 102 (1st Cir. 2022) ("In adjudicating a Rule 12(b)(6) motion, a district court may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint.").

[3] As the state court complaint is a public record, the Court may consider it on a motion to dismiss for failure to state a claim without transforming the motion to one for summary judgment. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (official public records may be considered without converting motion to dismiss to motion for summary judgment).

conscious pain and suffering, gross negligence, negligent entrustment, violations of M.G.L. ch. 90 § 32C, driving and operating on a suspended license, and negligent supervision. [Dkt. 70-1].

Plaintiff alleges that the Enterprise Defendants made various misrepresentations throughout the State Proceeding. First, in discovery, the Enterprise Defendants represented that their policy with Travelers Property Casualty Company of America, Travelers Policy No. HE-EAP-474M7302-TCT-18, ("the Travelers Policy") only applied to Enterprise employees. Second, the Enterprise Defendants allegedly made statements to the State Court that coverage was limited to the Bond. Finally, during their State Court depositions, Enterprise employees allegedly stated that ELCO and Enterprise Boston are not separate companies.

Enterprise Boston and Enterprise Holdings moved for summary judgment, and, on February 7, 2025, the Superior Court granted their motion. [Dkt. 70-2].[4] One month later, on March 7, 2025, final judgment was entered in favor of Enterprise Boston and Enterprise Holdings. [Dkt. 70-3].[5] Subsequently, the Superior Court conducted a trial and the jury returned a verdict against McCormick totaling $3,260,880.33 ("the McCormick Judgment").

### C. The Insurance Dispute

Following entry of judgment in the State Proceeding, on July 3, 2025, Plaintiff received the complete documentation associated with the Travelers Policy. Plaintiff did not allege who provided her with the Travelers Policy. Plaintiff also had a series of communications with Kevin P. Polansky, an attorney for Defendants Liberty Mutual and Safeco. In an August 5, 2025 letter from Polansky, it was allegedly disclosed for the first time that the Bond was entered into by and between Enterprise Rent-A-Car Company of Boston, EAN Trust, and EAN Holdings, LLC as

---

[4] As the state court opinion and judgment are public records, the Court may consider them on a motion to dismiss for failure to state a claim without transforming the motion to one for summary judgment. See Freeman, 714 F.3d at 36.
[5] Plaintiff appealed the judgment, and the appeal remains pending. [Dkt. 148].

principals, and Safeco Insurance Company of America as surety. On August 22, 2025, Travelers Property Casualty Company of America ("Travelers") denied coverage for the McCormick Judgement, allegedly improperly. In an August 25, 2025 correspondence with Travelers, Plaintiff's counsel provided a legal analysis purportedly demonstrating that the Travelers Policy covered the Incident.

On October 15, 2025, in further correspondence from Kevin P. Polansky, it was disclosed for the first time that the Ohio Casualty Insurance Company issued a Policy to Crawford and Enterprise Holdings, Inc., providing $25,000,000 in excess of $125,000,000 of primary limits. The October 15 disclosure also revealed the existence of multiple underlying insurance policies providing the $125,000,000 in primary coverage, including policies issued by American Guarantee, Continental, Indemnity, and XL Insurance. The Enterprise Defendants allegedly hid the existence of these policies to avoid paying the McCormick Judgment.

**D. Procedural History**

Seeking to recover the McCormick Judgment, Plaintiff initiated the present lawsuit in the Superior Court of the Commonwealth of Massachusetts on August 27, 2025. [Dkt. 1]. Two days later, the Enterprise Defendants removed the case to federal court. [Dkt. 1]. On September 30, 2025, Crawford filed their first Motion to Dismiss. [Dkt. 25]. On October 2, 2025, Plaintiff filed an Assented to Motion for Extension of Time to October 28, 2025 to File Response/Reply to the Enterprise Defendant's Motion to Dismiss, [Dkt. 29], which was granted on October 3, 2025, [Dkt. 30]. On October 27, 2025, Plaintiff filed a Second Motion for an Extension to respond to the Enterprise Defendant's Motion to Dismiss, which requested an extension to November 17, 2025. [Dkt. 36]. The following day, on October 28, 2025, Plaintiff filed an Amended Complaint. [Dkt. 38]. On November 12, the Court granted Plaintiff's Second Motion for an Extension [Dkt.

43] and denied the Enterprise Defendant's first Motion to Dismiss as moot [Dkt. 42]. On November 17, 2025, Plaintiff filed a Second Amended Complaint, styled as a "Renewed First Amended Complaint." [Dkt. 45]. Defendants filed a motion to strike the Second Amended Complaint on November 21, 2025, alleging that Plaintiff filed it without leave of the Court. [Dkt. 49, 50]. On November 25, 2025, the Court denied the Motion to Strike and ordered Plaintiff to identify the operative complaint in this action. [Dkt. 55]. Plaintiff responded by identifying the Second Amended Complaint (hereinafter, "the Complaint"). [Dkt. 61]. On December 23, 2025, the Enterprise Defendants filed the instant Motion to Dismiss. [Dkt. 81]. Additional Defendants filed Motions to Dismiss, which are addressed in separate opinions.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," courts must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, courts perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). However, courts need only accept well-pleaded allegations, not all allegations; "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the

conclusory and the factual.'" Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 557 n.5). Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" United Auto., Aero., Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Iqbal, 556 U.S. 662 (2009)).

On the second step, courts must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

## III. DISCUSSION

The Enterprise Defendants allege that the Complaint should be dismissed because 1) Plaintiff improperly employs group pleading, 2) two of Plaintiff's counts lack a private right of action, 3) the litigation privilege barres six counts, and 4) Plaintiff has not sufficiently pled the elements for six counts. Before addressing the Enterprise Defendants' arguments, the Court will address Plaintiff's two threshold arguments—whether the motion is precluded by Rule 12(g)(2) and whether the Enterprise Defendants met the local requirement to meet and confer prior to filing.

### A. Rule 12(g)(2)

At the outset, Plaintiff argues that Defendants' Motion is procedurally barred under Federal Rule of Civil Procedure 12(g)(2) because Defendants filed a Motion to Strike prior to filing their Motion to Dismiss. Rule 12(g)(2) states, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule

raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). In turn, Rule 12(h)(2) states, "[f]ailure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Read in combination, these rules provide that "a defense under Rule 12(b)(6) is specifically preserved by Rule 12(h)(2) and may be raised at any time before the end of trial, regardless of whether a Rule 12 motion on other grounds was filed at the pleading stage." MMB Dev. Grp., Ltd. v. Westernbank Puerto Rico, 762 F. Supp. 2d 356, 365 (D.P.R. 2010); see Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 388 (1st Cir. 2001).

Defendants filed a Motion to Strike because Plaintiff filed the Complaint without leave of the Court. [Dkt. 49]. Although the Court denied the Motion to Strike, it also noted that it could not "decern Plaintiff's intention based upon their filings" and ordered Plaintiff "to identify or submit their operative complaint." [Dkt. 55]. The Motion to Strike and the Court's order denying it did not raise issues addressed in the present Motion to Dismiss. Following the Court's order, Plaintiff identified the Complaint as the operative complaint on December 1, 2025, [Dkt. 61], and, after the Court granted a brief extension, Defendants timely filed the present Motion to Dismiss for failure to state a claim, [Dkt 81]. Although the Motion to Strike was filed pursuant to "another motion under this rule," Rule 12(f), the Enterprise Defendants are permitted to file the present Motion to Dismiss pursuant to Rule 12(b)(6). See MMB Dev. Grp., 762 F. Supp. 2d at 365. Accordingly, this action is not precluded by Rule 12(g)(2).

**B. Meet and Confer Requirement**

Plaintiff further alleges that the Enterprise Defendants failed to meet and confer in good faith before filing this dispositive motion, as required by Local Rule 7.1(a)(2). The Enterprise

Defendants counter that they attempted to reach Plaintiff's counsel multiple times before filing but were unable to make contact.

Local Rule 7.1(a)(2) provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Failure to confer may result in sanctions. See, e.g., Converse Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 171 (D. Mass. 2004). However, "a violation of [Local Rule 7.1(a)(2)] does not necessitate summary denial[,]" where "Plaintiff would have opposed the motion to dismiss in any event." Maloney v. Town of Hinsdale, No. 11-CV-11297, 2012 WL 4103909, at *2 (D. Mass. Aug. 10, 2012); see Higgins v. Verizon of New England, Inc., No. 18-CV-12092, 2019 WL 3546671, at *3 (D. Mass. Apr. 11, 2019).

With their Motion to Dismiss, the Enterprise Defendants filed a certification of compliance with Local Rule 7.1. [Dkt. 81 at 3]. Without supporting evidence, the Court finds no reason to doubt defense counsel's representation that he attempted to confer with Plaintiff in good faith. Even if defense counsel did not confer with Plaintiff before filing, failure to do so does not warrant denial of the motion, given that Plaintiff would have undoubtedly opposed the motion either way. Maloney, 2012 WL 4103909, at *2. Accordingly, the Court will proceed to address the merits of the Motion to Dismiss.

### C. Private Rights of Action – Counts IX and XI

Enterprise Defendants argue that Counts IX (M.G.L. 176D) and XI (Fraud on the Court) must be dismissed because those statutes lack a private right of action**.** In response, Plaintiff "elect[ed] to proceed on the pending Mass. R. 60 [Fraud on the Court] relief in state court and dismisse[d] count 11 without prejudice." [Dkt 97 at 25]. Accordingly, Count XI is dismissed.

Count IX brings a direct claim under M.G.L. ch. 176D. However, "chapter 176D provides no private cause of action and is enforceable only by the commissioner of insurance." Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 n.1 (1st Cir. 1993) (citing Dodd v. Commercial Union Ins. Co., 365 N.E.2d 802 (Mass. 1977)); see Salvati v. Am. Ins. Co., 855 F.3d 40, 49 (1st Cir. 2017) ("[T]o the extent that [the count] attempts to state an independent claim for recovery under [C]hapter 176D, it must fail.") (quoting M. DeMatteo Const. Co. v. Century Indem. Co., 182 F. Supp. 2d 146, 160 (D. Mass. 2001)). Although Plaintiff distinguished Thorpe and Salvati on factual grounds, she does not contest the legal proposition that Chapter 176D lacks a private right of action and does not point to conflicting authority. [Dkt. 97 at 22-23]. As Chapter 176D does not provide a private right of action, Count IX is dismissed.

### D. Litigation Privilege – Counts VI, VII, VIII, IX, X, and XI

The Enterprise Defendants argue that Counts VI, VII, VIII, IX, X, and XI[6] must be dismissed because they are premised upon statements that are protected by the litigation privilege. The Court agrees. The litigation privilege generally precludes civil liability based on "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding," and statements "preliminary to litigation" that relate to the contemplated proceeding. Gillette Co. v. Provost, 74 N.E.3d 275, 282 (Mass. App. Ct. 2017) (quoting Sriberg v. Raymond, 345 N.E.2d 882, 883 (Mass. 1976)). The litigation privilege is absolute and was developed to ensure attorneys and witnesses could engage in candid communication during a proceeding, without fear of future litigation. See Correllas v. Viveiros, 572 N.E.2d 7, 11 (Mass. 1991) ("An absolute privilege is favored because any final judgment may depend largely on the testimony of the party or witness, and full disclosure, in the interests of justice, should not be

[6] Though the Court has already dismissed Counts IX and XI, it includes those counts in its discussion of the litigation privilege as an alternative holding.

hampered by fear of an action for defamation."); Doe v. Nutter, McClennen & Fish, 668 N.E.2d 1329, 1333 (Mass. App. Ct. 1996).

The scope of the privilege is broad. Pre-suit communications are protected by the privilege so long as litigation is "contemplated in good faith" and "under serious consideration" at the time of the communication. Sriberg, 345 N.E.2d at 884. The privilege applies to "actions during the course of a judicial proceeding" as well as communications. Bassichis v. Flores, 189 N.E.3d 640, 652 (2022). This includes allegedly "purposefully withheld information" and extends to statements "regardless of malice, bad faith, or any nefarious motives." Id. at 644, 646.

Nonetheless, the privilege does not apply to discussions of "business matters generally," which are unrelated to litigation. Id. at 652. Only actions that "occurred in the context" of the litigation are covered. Id. Additionally, a statement is protected only if it relates to or was made during a proceeding that is "sufficiently judicial or quasi judicial in nature." Fisher v. Lint, 868 N.E.2d 161, 168 (Mass. App. Ct. 2007).

Counts VI, VII, VIII, IX, X, and XI are premised upon four types of statements that are privileged under the litigation privilege. First, Counts VI and VII are based upon the Enterprise Defendants' statements, made during discovery in the State Proceeding, that the Travelers Policy only applied to Enterprise employees. [Dkt. 45 ¶ 42, 95, 109]. Second, statements to the State Court that coverage was limited to the Bond are the basis for Counts VII, X, and XI. [Id. ¶ 109, 144, 155]. Third, Counts VII and X are premised upon Enterprise employees' deposition testimony that ELCO and Enterprise Rent-A-Car Company of Boston are not separate companies. [Id. ¶ 20, 109, 144]. These three sets of statements were made during deposition testimony, in discovery, and in front of the State Court. Because they were made during the

State Proceeding, reliance upon these statements is plainly prohibited by the litigation privilege. Gillette Co., 74 N.E.3d at 282.

Fourth, all six counts rely upon the Borst Statement, which was made before the State Proceeding was initiated. [Dkt. 45 ¶ 18, 48]. Courts determine whether the litigation privilege is applicable to a particular statement "on a case-by-case basis, after a fact-specific analysis." Fisher v. Lint, 868 N.E.2d 161, 167 (Mass. App. Ct. 2007). Around February 2019, Plaintiff's counsel made "statutory demands pursuant to M.G.L. c. 175, § 112C" seeking coverage for the Incident. [Dkt. 45 ¶ 18, 60]. In response, Borst informed Plaintiff's counsel that "vehicles rented from Enterprise Rent-A-Car Company of Boston d/b/a Enterprise are self-insured and provides proof of financial responsibility through a bond pursuant to M.G.L. c.90 §34A, limits up to 20/40/5 (a copy is on file at the Department of Motor Vehicle)." In May 2020, Plaintiff sued Enterprise Rent-A-Car Company of Boston and Enterprise Holdings, Inc. seeking to hold them accountable for the Incident. Plaintiff describes the request for insurance coverage as a "statutory demand," the demand was made by Plaintiff's counsel, Plaintiff sued Enterprise after making the demand, and the lawsuit was directly related to the subject matter of the demand. Taken together, these facts establish that the Borst Statement was made while the State Proceeding was "contemplated in good faith" and "under serious consideration." Sriberg, 345 N.E.2d at 884.

Relying upon Patriot Group, LLC v. Edmands, 136 N.E.3d 386 (Mass. App. Ct. 2019), Plaintiff argues that the Borst Statement addressed business matters generally. [Dkt. 97 at 20]. In Patriot, the plaintiff, Patriot Group, brought a defamation suit against Steven Fustolo's attorneys. Patriot, 136 N.E.3d at 388-89. At Fustolo's direction, the defendants wrote a letter to Patriot Group stating that Patriot Group had committed tax fraud, that the defendants had submitted

whistleblower claims with the Internal Revenue Service (IRS) and Securities and Exchange Commission (SEC), that Fustolo anticipated filing additional claims, and that Patriot had brought a bankruptcy proceeding against Fustolo to destroy his reputation. Id. at 389-90. The defendants argued that the letter was protected by litigation privilege and could, therefore, not be the basis of the defamation suit. Id. at 392. The court disagreed.

The court held that the letter was not protected because there was no indication that the IRS and SEC claims were ever filed, and, even if the claims were filed, there was not sufficient evidence to establish that IRS and SEC proceedings are "'judicial or quasi judicial in nature,' thus triggering the absolute litigation privilege." Patriot, 136 N.E.3d at 394 (quoting Fisher, 868 N.E.2d at 168). Further, Fustolo's bankruptcy case could not provide a basis for the defendants' litigation privilege defense because "the entirety of the May 9th letter relates to Fustolo's status as a whistleblower, not to the bankruptcy proceeding itself." Patriot, 136 N.E.3d at 395 (internal quotation marks omitted).

In contrast, here, there is no dispute as to whether the State Proceeding is a "judicial proceeding." Additionally, unlike in Patriot, the Borst Statement did not cursorily reference the State Proceeding. Instead, the demand letter sought coverage for the Incident, the Borst Statement stated a position about coverage for the Incident, and the ensuing State Proceeding sought recovery for damages from the Incident. As such, the Borst Statement was directly related to the State Court litigation and, therefore, were not part of general business matters. The Complaint substantiates this finding. In Count XI, Plaintiff brings an action for Fraud on the Court. The factual basis for this cause of action includes the Borst Statement. [Dkt. 45 ¶ 152]. By relying upon the Borst Statement as part of her claim of Fraud on the Court, Plaintiff implicitly acknowledges that the Borst Statement was made in connection with the State

Proceeding. Accordingly, the Borst Statement is also protected by the litigation privilege. Without the privileged statements, the Complaint does not allege any facts to support Counts VI, VII, VIII, IX, X, and XI. Accordingly Counts VI, VII, VIII, IX, X, and XI are dismissed. Because the Court finds that Counts VI, VII, VIII, IX, X, and XI are barred by the litigation privilege, the Court need not address the Enterprise Defendants alternative arguments.

**E. Breach of Contract and Declaratory Judgment – Counts IV and V**

Plaintiff brings a breach of contract claim against the Enterprise Defendants for their refusal to cover harms from the Incident and seeks declaratory relief establishing (1) the Enterprise Defendants' insurance covers the harms caused by the Incident, (2) the specific limits of coverage available from each defendant who is an insurer, (3) the priority of coverage among the defendants, and (4) that the Enterprise Defendants are obligated to pay the McCormick Judgment and related damages.

Plaintiff alleges that she is a third-party beneficiary of the Enterprise Defendants' insurance policies. An injured third-party beneficiary may only sue on an insurance contract if (1) the policy covers the injury at issue and (2) only after securing a judgment against the insured. Martins v. Vermont Mut. Ins. Co., 92 F.4th 325, 329 (1st Cir. 2024).[7] Plaintiff falls short on both counts.

**1. Policy Language**

The Court starts with whether harms from the Incident are covered by the Enterprise Defendants' policies. The Enterprise Defendants point to the Travelers Policy to argue that the McCormick Judgment is not covered by their insurance. Ascertaining the meaning of an insurance policy "is no different from the interpretation of any other contract, and [courts] must

[7] Plaintiff distinguishes Martins on various factual grounds but does not contest this holding or point to countervailing authority. [Dkt. 97 at 10-11].

construe the words of the policy in their usual and ordinary sense." Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1164 (Mass. 1997). Ambiguities in the policy must be interpreted in favor of the insured, and exclusions are interpreted narrowly. U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc., 797 F.3d 116, 120 (1st Cir. 2015). A Court "may conclude that language is ambiguous only 'where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.'" Surabian Realty Co. v. NGM Ins. Co., 971 N.E.2d 268, 271 (Mass. 2012) (quoting Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907 (Mass. 2008)). Ambiguities are "not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012).

If the policy's language is clear and unambiguous, a court must "give effect to that language, without considering the underlying intent of the parties." Masonic Temple Ass'n of Quincy, Inc. v. Patel, 185 N.E.3d 888, 894 (Mass. 2022) (quoting Great Divide Ins. Co. v. Lexington Ins. Co., 84 N.E.3d 844, 848 (Mass. 2017)). Finally, interpreting policy language is a legal issue, and is therefore appropriate to determine on a motion to dismiss. SAS Int'l, Ltd. v. Gen. Star Indem. Co., 520 F. Supp. 3d 140, 142 (D. Mass. 2021), aff'd on other grounds, 36 F.4th 23 (1st Cir. 2022) ("The interpretation of an insurance policy is a question of law for the court.").

The relevant policy provision, here, is Endorsement 22.[8] Endorsement 22 of the Travelers Policy states:

> **EXCLUSION - RENTEES/LESSEES OR PERMISSIVE USERS**
>
> This endorsement modifies insurance provided under the following: EXCESS AUTO LIABILITY COVERAGE PART

[8] As Plaintiff references the Travelers Policy in the Complaint and relies upon it for allegations, the Court can consider the Travelers Policy on at the motion to dismiss phase. Rivera, 30 F.4th at 102.

> **WHO IS AN INSURED** (Section II) is amended to include the following: No coverage is provided under this insurance for:
>
> A lessee or rentee
> Any "employee" or agent of the lessee or rentee; and
> Any person operating an "auto" with the permission of any of the above.

[Dkt. 74-1 at 114].

As Plaintiff acknowledges, McCormick rented the vehicle in the Incident from Enterprise Rent-A-Car. As such, McCormick was a "rentee." On the plain language of the Travelers Policy, McCormick's actions are not covered.

In response, Plaintiff argues that (1) the Travelers Policy is ambiguous and must be read in Plaintiff's favor, (2) Endorsement 22's scope is limited and does not apply to all coverage, (3) Massachusetts law mandates coverage for permissive users, and (4) the Court cannot determine coverage until all policies are produced.

The Court begins with the alleged ambiguities and contradictions in the Travelers Policy. Plaintiff argues the Travelers Policy is ambiguous because "[t]he 'Any Auto' Coverage Provisions provide coverage for 'any auto,' which by its plain terms includes rental vehicles operated by permissive users." [Dkt. 97 at 6]. Although Plaintiff did not cite to the particular provision, the Court assumes the "Any Auto Coverage Provision" references the "Declarations" page that describes "COVERED AUTOS" as "Any auto." [Dkt. 74-1 at 9]. The "Declarations" page also says, "Form(s) and Endorsement(s) made a part of this policy at this time: See Listing of Forms and Endorsements Forming a Part of This Policy." [Dkt. 74-1 at 9]. The Listing of Forms and Endorsements includes Endorsement 22. [Dkt. 74-1 at 6]. Because the "Declarations" page, which includes the "Any auto" provision, explicitly incorporated Endorsement 22, the "Any auto" provision does not create ambiguity in the Travelers Policy.

Plaintiff also alleges that ambiguity is created because "[t]he Insuring Agreement's Broad Scope covers 'all sums' Crawford becomes legally obligated to pay 'by reason of liability imposed by law.'" [Dkt. 97 at 6]. As Plaintiff does not explain which provision she is referring to[9] and does not further develop this argument, the argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Next, the Court addresses Endorsement 22's purportedly limited scope. Plaintiff argues that Endorsement 22 only modifies the "EXCESS AUTO LIABILITY COVERAGE PART," without modifying the Self-Funded Retention obligations. [Dkt. 97 at 6]. This is a misreading of the policy. Although the Travelers Policy initially established a self-insured retention ("SIR") of $2,000,000, [Dkt. 74-1 at 9], Endorsement 4 modifies the SIR and increased it to $3,000,000 per accident [id. at 22]. The Travelers Policy's coverage grant states:

> We will pay "ultimate net loss" in excess of the "self-insured retention" because of "bodily injury" or "property damage" to which this insurance applies, caused by an accident" and resulting from the ownership, maintenance or use of a covered "auto."

[Id. at 10]. The Travelers Policy further states, "[t]he 'self-insured retention' is not exhausted or diminished by payment of any loss, claim or 'suit' that is not covered by this Coverage Form." [Id. at 16]. Under the plain language of this definition, the SIR is only satisfied with claims that are otherwise covered under the policy. Accordingly, Endorsement 22 applies to the SIR.

Next, citing to M.G.L. ch. 90, § 34A and ch. 175, § 113A(1), Plaintiff argues that "Massachusetts law mandates that motor vehicle liability policies provide coverage to 'any person responsible for the operation of the insured's motor vehicle with his express or implied

[9] In fact, the phrase "by reason of liability imposed by law" does not appear in the Travelers Policy, and the Court has not been able to identify a "all sums provision" in the Travelers Policy.

consent,'" and "[a]ny policy provision purporting to exclude permissive users' conflicts with these mandatory statutory requirements." [Dkt. 97 at 8]. This argument is unavailing for two reasons. First, as Plaintiff is aware, "vehicles rented from Enterprise Rent-A-Car Company of Boston d/b/a Enterprise are self-insured and provide[d] proof of financial responsibility through a bond pursuant to M.G.L. c.90 §34A." [Dkt. 45 ¶ 18]. As the Enterprise Defendants provided the statutorily required coverage, they are free to exclude other coverage from their other policies. As such there is no conflict between the Travelers Policy and Massachusetts law.

This argument also fails because M.G.L. ch. 175 § 112C's disclosure requirement only applies to primary automobile liability policies providing compulsory coverage. Xu v. Donovan, 34 Mass. L. Rptr. 312, 2017 WL 3080319, at *4-5 (Mass. June 2, 2017) ("Defendants had no duty to disclose the excess insurance policy. By statute, [Tufts Medical Center's] captive insurer had a duty to reveal to Plaintiffs 'the amount of the limits' of the insureds' liability coverage. G.L.c. 175, § 112C. That duty was satisfied when Tufts informed Plaintiffs that the defendants in the medical malpractice case each had $2.5 million in professional liability coverage."). The Travelers Policy is an excess liability policy. Therefore, M.G.L. ch. 175 § 112C's disclosure requirement does not apply to the Travelers Policy.

Finally, Plaintiff alleges that it is premature to decide the extent of Defendants' coverage because "[u]pon information and belief, there may be additional insurance policies, defendants, and parties that have not been disclosed." [Dkt. 45 ¶ 65]. The sole basis for Plaintiff's contention that there is additional insurance coverage is "the Polansky letter." [See e.g., Dkt. 45 ¶¶ 19, 65]. Plaintiff references two letters from Polansky throughout the Complaint, one from October 15, 2025 [Dkt. 70-5] and one from August 5, 2025 [Dkt. 70-4].[10]

[10] Because the Polansky letters are referred to throughout the Complaint and are the basis for several of Plaintiff's factual allegations, the Court may review the letters. See Rivera, 30 F.4th at 102.

Upon review of both letters, neither provides any indication that an undisclosed insurance policy exists. Specifically, Polansky's mention of the Travelers Policy's "limit of $25,000,000 in excess of $125,000,000," alone, does not indicate the existence of undisclosed policies. [Dkt. 70-5]. This is a description of the Travelers Policy, not a veiled hit that undisclosed policies exist. Similarly, the existence of some previously undisclosed policies does not prove the existence of other undisclosed policies. While courts must generally accept all factual allegations in the Complaint as true, "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" Penalbert-Rosa, 631 F.3d at 595. Plaintiff's unsupported contention that an unknown, undisclosed policy exists fails to cross this line. Accordingly, the Court need not defer to that factual allegation. Because the plain text of the Travelers Policy excludes coverage for McCormick's actions, and Plaintiff's do not point to any other policy which provides coverage, Counts IV and V are dismissed.

**2. Securing Judgment**

Having determined that the Travelers Policy does not provide the coverage Plaintiff seeks, the Court could stop its analysis here. However, for the sake of completeness, the Court will next assess whether Plaintiff has secured judgment against an insured. Under Massachusetts law, third-party beneficiaries of an insurance contract must "secure a final judgment against the insured party before suing the insurer for an alleged failure to pay damages under the policy." Cubberley v. Com. Ins. Co., 249 N.E.3d 1129, 1135 (Mass. 2025);[11] see Rogan v. Liberty Mutual Insurance Co., 25 N.E.2d 188, 189 (Mass. 1940) ("The statutes affording a remedy for an injured plaintiff against an insurer issuing a liability policy require as a prerequisite to suit 'the

[11] Although Plaintiff distinguished Cubberley on factual grounds, she does not contest this holding or point to any countervailing authority. [Dkt. 97 at 11].

recovery of a final judgment' against the insured wrongdoer."); Shapiro v. State Farm Mut. Ins. Co., 242 N.E.2d 753, 755 (Mass. 1968) ("A valid judgment in the original action, of course, is a prerequisite of the present suit.").

As the Massachusetts Supreme Judicial Court recently explained, this rule is based upon two statutes—M.G.L. ch. 175, § 113, and ch. 214, § 3 (9). See Cubberley, 249 N.E.3d at 1135. First, M.G.L. ch. 175, § 113, provides that "[u]pon the recovery of a final judgment against any person by any person, including executors or administrators, for any loss or damage specified in the preceding section, if the judgment debtor was at the accrual of the cause of action insured against liability therefor, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment."

Second, M.G.L. ch. 214, § 3 (9), grants jurisdiction to this Court and the Superior Court over "[a]ctions to reach and apply the obligation of an insurance company to a judgment debtor under a motor vehicle liability policy . . . in satisfaction of a judgment covered by such policy." When taken together "these statutes establish that obtaining a valid final judgment against the insured judgment debtor is a prerequisite to initiating an action against the insurer to reach and apply." Cubberley, 249 N.E.3d at 1135.

Plaintiff argues that she "*has* obtained a final judgment—the McCormick Judgment of $3,260,880.33." [Dkt. 97 at 10]. Defendant counters that McCormick is not a "judgment debtor" because her actions are not covered under any of Defendants' insurance policies. As the Court previously explained, the Policy excludes "rentees," including McCormick. Because McCormick, "the judgment debtor," was not "insured against liability" by the Travelers Policy, Plaintiff is not "entitled to have the insurance money applied to the satisfaction of the judgment." M.G.L. ch. 175, § 113. In the same vein, because Travelers did not have an "obligation" to

McCormick under the Policy, this Court does not have jurisdiction over action to reach and apply funds in satisfaction of the McCormick Judgment. M.G.L. ch. 214, § 3 (9). Therefore, Plaintiff also has not established the second requirement to bring her breach of contract action. Because Plaintiff's declaratory judgment claim is derivative of her breach of contract claim, Count IV is also dismissed. Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co., No. 14-CV-13649, 2015 WL 13234578, at *10 (D. Mass. Sept. 22, 2015) ("[B]ecause the Court has concluded that [the defendant] correctly denied coverage under the Policies, dismissal of the declaratory judgment count is also warranted."). Accordingly, Counts IV and V are dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Enterprise Defendant's Motion to Dismiss [Dkt. 81] is **GRANTED**.

**SO ORDERED.**

Dated: September 2, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge