**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ROSARIO AGUILAR,
*as Representative of Maryori M. Conde and as Personal Representative of the Estate of Maryori M. Conde,*

Plaintiff,

v.

THE CRAWFORD GROUP, INC., LIBERTY MUTUAL INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, SHAUNA MCCORMICK, ESTATE OF SEAN ST. LOUIS, ELCO ADMINISTRATIVE SERVICES COMPANY, THE OHIO CASUALTY INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE CO., EAN TRUST, EAN HOLDINGS, LLC,

Defendants.

Civil Action No. 25-CV-12395-AK

# MEMORANDUM AND ORDER ON MOTION FOR SANCTIONS

**ANGEL KELLEY, D.J.**

> *"The things we hold dearest on earth,—our fortunes, reputations, domestic peace, the future of those dearest to us, nay, our liberty and life itself, we confide to the integrity of our legal counsellors and advocates. Their character must be not only without a stain, but without suspicion."*
>
> — GEORGE SHARSWOOD, AN ESSAY ON PROFESSIONAL ETHICS 112 (2d ed. 1860)

Character remains essential to the judicial system. But, our collective character is tested with the influx of Artificial Intelligence ("AI") in the legal field. With its great many promises,

AI also brings perils. As old institutions work to catch up with new technologies, the legal news outlets regularly report another brief or opinion that was published with fictitious citations or facts. This is another one of those cases.

Defendants the Crawford Group, Inc., ELCO Administrative Services Company, EAN Trust, and EAN Holdings, LLC (collectively, "the Enterprise Defendants") have filed a Motion for Sanctions based upon fictitious and misleading citations in Plaintiff's Opposition to the Enterprise Defendants' Motion to Strike the Second Amended Complaint. The Enterprise Defendants also alerted the Court to errors in Plaintiff's Opposition to their Motion to Dismiss, and the Court independently identified errors in two of Plaintiff's filings, including Plaintiff's Opposition to Defendant Travelers Property Casualty Company of America's ("Travelers") Motion to Dismiss. For the following reasons, the Enterprise Defendants' Motion for Sanctions [Dkt. 65] is **GRANTED** and the Court imposes sanctions pursuant to Federal Rule of Civil Procedure 11.

## I. BACKGROUND

The Court begins by charting this case's extensive history. This action arises from a tragic motor vehicle incident that occurred in 2019. In the incident, Sean St. Louis, driving a vehicle rented from Enterprise Rent-A-Car by Shauna McCormick, collided with a vehicle causing the death of its backseat passenger, Maryori Conde. Following the incident, Plaintiff filed suit in state court against two entities associated with the Enterprise Defendants, McCormick, and the driver of the vehicle that Conde was a passenger in. Plaintiff obtained a $3,260,880.33 judgment against McCormick ("the McCormick Judgment"), but the state court dismissed all claims against the Enterprise entities on a Motion for Summary Judgment.

Seeking to recover the McCormick Judgment, Plaintiff initiated this lawsuit in the Superior Court of the Commonwealth of Massachusetts on August 27, 2025. Among other claims, Plaintiff sought insurance coverage from the Enterprise Defendants' insurers and brought a negligence action against the Estate of Sean St. Louis.[1] Two days after the Complaint was filed, the Enterprise Defendants removed the case to federal court. On September 4, 2025, Attorney Austin Dana appeared in this case as local counsel for Plaintiff. The same day, Plaintiff filed a Motion for the Pro Hac Vice Admission of California-barred Attorney Blake Lindemann ("Lindemann"), which was granted.

On September 30, 2025, the Crawford Group filed their first Motion to Dismiss. On October 2, 2025, the parties agreed to extend the time for Plaintiff to respond until October 28, 2025, which the Court allowed. On October 27, 2025, Plaintiff filed a Second Motion for an Extension to respond to the Crawford Group's Motion to Dismiss, which requested an extension to November 17, 2025. Despite the parties agreed-upon extension, the following day, on October 28, 2025, Plaintiff filed an Amended Complaint, within the original deadline.

On November 12, 2025 the Court granted Plaintiff's Second Motion for an Extension and denied the Crawford Group's first Motion to Dismiss as moot. Before the second extension deadline, on November 17, 2025, Plaintiff filed a Second Amended Complaint, styled as a "Renewed First Amended Complaint." [Dkt. 45]. Defendants filed a Motion to Strike the Second Amended Complaint on November 21, 2025, arguing that Plaintiff filed it without leave of the Court. [Dkts. 49; 50]. Within five hours of the Enterprise Defendants' filing of the Motion to Strike, Lindemann filed a twenty-page Opposition to the Motion to Strike ("the Strike Opposition"). [Dkt. 51].

[1] Sean St. Louis also lost his life in the car crash.

The Strike Opposition was replete with inaccurate citations, including:[2]

- Citing Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995), six times for a legal proposition that it does not stand for. [Dkt. 51 at 2, 13-14].
- Attributing a quotation to a case with a fictitious Westlaw citation. [Id. at 12 (citing Federal Deposit Insurance Corp. v. Jones)].[3]
- Citing Henderson v. Bank of New York Mellon, 322 F.R.D. 432, 434 (D. Mass. 2017), for a proposition it does not stand for. [Dkt. 51 at 15].
- Citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990), for a legal standard that it does not state. [Dkt. 51 at 18].
- Citing J&A Realty v. City of Asbury Park, 763 F. Supp. 85, 87 (D.N.J. 1991), for a quote it does not contain and a legal standard it does not state. [Dkt. 51 at 3, 18].
- Citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996), for a non-existent quote. [Dkt. 51 at 20].
- Altering a quotation from Love v. Mich. Prop. Res., 737 F. Supp. 3d 600 (E.D. Mich. 2024), without indicating the changes and mischaracterizing the case's holding. [Dkt. 51 at 5].
- Omitting attribution for at least two quotations. [Id. at 8, 15].
- Failing to indicate significant alterations to several quotations. [See, e.g., id. at 2-3 ("quoting" Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003)); id. at 3 ("quoting" Hanley v. Volpe, 305 F. Supp. 977 (E.D. Wis. 1969); id. at 5 ("quoting" Karle v. Sw. Credit Sys., No. 14-CV-30058, 2015 WL 247981, at *2 (D. Mass. Jan. 20, 2015)).

On November 25, 2025, before discovering the inaccurate citations, the Court denied the Motion to Strike and ordered Plaintiff to clarify the record by identifying the operative complaint in this action. On December 1, 2026, Lindemann filed a Notice of Withdrawal, which stated, in its entirety, that "Plaintiff hereby gives notice of withdrawal of her Response in Opposition to [Enterprise] Defendants' Motion to Strike Renewed First Amended Complaint [D.I. 51], and if necessary, will file a response when due pursuant to L.R. 7.1(b)(2), by December 5, 2025." [Dkt.

[2] When enumerating the errors in Plaintiff's Oppositions, the Court has omitted reference to any errors that are conceivably scriveners' errors.

[3] While describing the errors in Plaintiff's papers, the Court has omitted incorrect citations to avoid repeating fictitious citations.

62]. In response to the Court's Order to Show Cause, discussed in further detail below, Lindemann appears to attribute the delay in withdrawal to the fact that he left for vacation after filing the Strike Opposition and did not evaluate the citation issues until his return. [See Dkt. 135 at 13-14].

On December 5, 2026, the Enterprise Defendants filed the present Motion for Sanctions, alleging that the Strike Opposition contained inaccurate and fictitious authority, resulting from Lindemann's use of AI. [Dkts. 65; 66]. Following the filing of the Motion for Sanctions and resolution of the Motion to Strike, four groups of Defendants filed Motions to Dismiss [Dkts. 69; 73; 81; 136], which Plaintiff opposed [Dkts. 93; 94; 97; 140]. Three of the four Oppositions to the Motions to Dismiss contain significant citation errors, including:

- Again, citing Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995), in a manner materially identical to the Strike Opposition. [Dkt. 97 at 2, 5].
- Providing the incorrect citation for Scottsdale Insurance Co. v. MRH Indian Enterprises, No. 19-CV-11878, 2020 WL 3545512 (D. Mass. June 30, 2020). [Dkt. 93 at 4].
- Providing the incorrect citation for SAS International Ltd. v. General Star Indemnity Co., 36 F.4th 23 (1st Cir. 2022). [Dkt. 94 at 9].
- Citing to a non-existent case. [Dkt. 97 at 19].[4]
- Citing Green Mountain Ins. Co., 484 Mass. 222 (2020), for a quotation it does not contain. [Dkt. 93 at 7, 11].
- Citing Citizens Insurance. Co. of America v. Federated Mutual Insurance Co., 448 Mich. 225 (1995), for a quotation it does not contain and a legal proposition it does not state. [Dkt. 93 at 13].
- Asserting that "[t]he [Enterprise] Defendants cite . . . Moore v. GEICO General Insurance Co.," when the Enterprise Defendants do not cite that case and the

[4] In his Response to the Court's Order to Show Cause, Lindemann admitted to this error and provided the appropriate citation, Dorchester Mutual Insurance Co. v. Krusell, 485 Mass. 431 (2020). [Dkt. 135 at 5].

> provided citation is fictitious.[5] [Dkt. 97 at 8-9; see also id. at 24 (same for Hertz Corp. v. Superior Court)].

Amid briefing on the Motions to Dismiss, Lindemann opposed the Enterprise Defendants' Motion for Sanctions. In opposition, Lindemann argued that sanctions are prohibited by Rule 11's Mandatory Safe Harbor Provision and that the citation errors were inputted into an earlier draft of the Strike Opposition that was inadvertently filed with the Court. [Dkt. 92]. Lindemann also argued that the Enterprise Defendants' alleged concealment of insurance coverage is sanctionable, though he did not separately move for sanctions.

In the Enterprise Defendants' Reply to the Motion for Sanctions, they identified further citation errors in Plaintiff's Opposition to their Motion to Dismiss ("the Enterprise Opposition"). [Dkt. 103]. After confirming the identified errors in the Enterprise Opposition and identifying errors in Plaintiff's Opposition to Travelers' Motion to Dismiss ("the Travelers Opposition"), the Court issued an Order to Show Cause, asking Plaintiff to show cause why sanctions should not be imposed for the inaccurate and fictitious citations in the Enterprise, Travelers, and Strike Oppositions. [Dkt. 126]. In his Response, submitted on April 11, 2026, Lindemann corrected only two citation errors in the Enterprise Opposition and one error in the Strike Opposition, characterizing the remaining issues as "typographical errors." [Dkt. 135 at 4-5 and n.3]. Lindemann admitted to using AI to draft the Strike Opposition, explaining that he believed that the enterprise-level version of AI software he was using did not hallucinate cases, and reiterated

[5] In his Response to the Court's Order to Show Cause, Lindemann admitted this error and provided the correct citation, Moore v. Geico General Insurance Co., No. 13-CV-1569, 2014 WL 2938430 (M.D. Fla. June 30, 2014), rev'd, No. 14-13356, 2016 WL 123831 (11th Cir. Jan. 12, 2016), vacated and superseded, 633 F. App'x 924 (11th Cir. 2016), rev'd, 633 F. App'x 924 (11th Cir. 2016). [Dkt. 135 at 5-6]. However, Lindemann omitted the Westlaw citation and incorrectly stated that the case was affirmed by the Eleventh Circuit, when in fact, the case was reversed and remanded. [See id.].

that "[i]n [his] haste to file before an extended vacation, [Lindemann] inadvertently filed an incorrect version of the [Strike Opposition]—specifically, a PDF version of [a] prior draft of the work product rather than the final, verified document." [Id. at 13-14, 17-18]. Lindemann attributes the citation errors in the Travelers and Enterprise Oppositions to a prolonged bout of influenza. [Id. at 16-17]. Additionally, Lindemann clarified that he was the sole attorney responsible for submitting the offending briefs and informed the Court that he has since implemented citation-verification procedures. [Id. at 2 n.1, 10].

After responding to the Court's Order to Show Cause, Lindemann filed an additional submission regarding sanctions. [Dkt. 141]. There, Lindemann reiterated that he has implemented citation-verification procedures and informed the Court that, of his own volition, he completed Continuing Legal Education ("CLE") credits on the ethical use of AI. [Id. at 1-2].

On September 2, 2026, the Court granted all four Defendants' Motions to Dismiss. [Dkts. 151; 152; 153; 154]. This leaves only McCormick and the Estate of Sean St. Louis as Defendants in the case. Having established the relevant facts, the Court now addresses whether Lindemann's conduct merits sanctions.

## II. DISCUSSION

The Enterprise Defendants seek sanctions through three mechanisms, (1) Federal Rule of Civil Procedure 11, (2) the Court's inherent authority, and (3) 28 U.S.C. § 1927. Because sanctions are warranted under Rule 11, the Court does not reach the other sanction authorities.

### A. Rule 11 Standard

Rule 11 empowers a court to impose sanctions on a party or attorney "for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Int'l Co. v. Rochem Int'l, Inc., 659 F.3d 53, 60 (1st Cir. 2011) (citing Fed. R. Civ. P. 11(b)).

Specifically, Rule 11(b) permits sanctions "only for misconduct in presenting 'a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it.'" Balerna v. Gilberti, 708 F.3d 319, 323 (1st Cir. 2013) (quoting Fed. R. Civ. P. 11(b)).

Rule 11 establishes two procedures through which sanctions can be imposed—(1) on a motion by a party and (2) by a court's order to show cause. First, when a party moves for sanctions, the motion "must be made separately from any other," and it "must be served [on the offending party] under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). These procedures provide a "safe harbor" for attorneys, law firms, or parties accused of sanctionable conduct. Triantos v. Guaetta & Benson, LLC, 91 F.4th 556, 561 (1st Cir. 2024). However, "once a court has evaluated and ruled on the challenged filing, the attorney or unrepresented party can no longer withdraw it." Id. Second, the Court may also issue Rule 11 sanctions on its own initiative by ordering "an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

In determining whether a Rule 11 violation occurred, "a court generally must use an objective standard, asking what is reasonable under the circumstances." In re Ames, 993 F.3d 27, 34 (1st Cir. 2021) (cleaned up). In doing so, courts consider "the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information." Id. (quoting Navarro-Ayala v. Nunez, 968 F.2d 1421, 1425 (1st Cir. 1992)). Moreover, "some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual must, at the very least, be culpably careless to commit a violation." Id. at 34-35 (quoting Roger Edwards, LLC v. Fiddes & Son Ltd.,

437 F.3d 140, 142 (1st Cir. 2006)) (internal quotation marks omitted). "A finding of bad faith is not required" for imposing sanctions, regardless of whether they are court-initiated or sought by an opposing party. Reyes v. Pro. Hepa Certificate Corp., 86 F. Supp. 3d 79, 83 (D.P.R. 2015) (court-initiated sanctions), aff'd sub nom. Escribano-Reyes v. Pro. Hepa Certificate Corp., 817 F.3d 380 (1st Cir. 2016).

The use of AI has become common practice in the legal field and elsewhere. The risks associated with AI's usage are likewise well known. For example, AI can "hallucinate" fictitious cases, attribute quotes to incorrect cases, and misstate the holdings of cases. Courts within the First Circuit and throughout the country have imposed Rule 11 sanctions upon parties who have filed briefs with fictitious or misleading citations because of the parties' use of AI. See, e.g., Fuller v. Hyde Sch., No. 2:25-CV-00354, 2026 WL 1229142 (D. Me. May 5, 2026); Mata v. Avianca, Inc., 678 F. Supp. 3d 443 (S.D.N.Y. 2023); Johnson v. Dunn, 792 F. Supp. 3d 1241 (N.D. Ala. 2025); Wadsworth v. Walmart Inc., 348 F.R.D. 489 (D. Wyo. 2025); Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC, No. 2:24-CV-00326, 2025 WL 574234, at *1 (S.D. Ind. Feb. 21, 2025), report and recommendation adopted as modified, No. 2:24-CV-00326, 2025 WL 1511211 (S.D. Ind. May 28, 2025). Sanctions are warranted in these instances because "[a] fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." Park v. Kim, 91 F.4th 610, 615 (2d Cir. 2024) (quoting Mata, 678 F. Supp. 3d at 461).

**B. Application**

The Court starts by addressing Rule 11's procedural requirements. As an initial matter, the "safe harbor" provision does not apply to this case. The Enterprise Defendants filed their Motion to Strike on November 21, 2025. The Court denied the Motion to Strike on November 25, 2025, and Lindemann did not withdraw the Strike Opposition until six days later, on December 1, 2025. Because the Motion to Strike was denied before Lindemann withdrew his Opposition, the Strike Opposition does not fall within Rule 11's safe harbor. Triantos, 91 F.4th at 561.

Both the Enterprise Defendants and the Court have followed the required procedures under Rule 11. The Enterprise Defendants filed their Motion for Sanctions in a separate document and provided Lindemann with notice of their motion and an opportunity to respond. Subsequently, the Court entered an order instructing Lindemann to show cause why he should not be sanctioned for the use of false and misleading citations in the Enterprise, Travelers, and Strike Oppositions.[6] Lindemann defended against the request for sanctions by explaining the errors and arguing that sanctions should not be imposed.[7] Therefore, Rule 11's procedural requirements have been met for the Court to enter sanctions against Lindemann for all three Oppositions.

---

[6] The Court abstains from entering sanctions for errors in Plaintiff's Oppositions to the other Defendants' Motions to Dismiss because the errors were less severe and pervasive, and the other Defendants did not move for sanctions.

[7] Lindemann requested the opportunity to correct and explain any errors found by the Court that he overlooked. The Court declines this request. The Court is not inclined to provide Lindemann with another opportunity to correct his mistakes when he has failed to do so after being warned by the Enterprise Defendants in an email, having a Motion for Sanctions filed against him, and being ordered to show cause from the Court. Attorney Lindemann has demonstrated either unwillingness or inability to confirm the legal authority upon which he relies. The Court does not need to gather any further data on this point.

Having determined that Rule 11's procedural requirements are met, the Court turns to why sanctions are warranted here. Beginning with the Strike Opposition, approximately half of the citations in Lindemann's memorandum of law contain an error. Most egregiously, Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995), is the only case cited in support of the argument that "Defendants are barred from filing additional Rule 12 motions under Rule 12(g)(2)." [Dkt. 51 at 12-13]. Not only is this proposition incorrect, as the Court explained in its order granting the Enterprise Defendants' Motion to Dismiss, but also it is not supported by Rodriguez. In fact, Rodriguez never mentions Rule 12. In addition, the Strike Opposition cites at least five other cases for quotations they do not contain, includes a fictitious Westlaw citation, omits authority for at least one citation, and seriously misquotes at least four cases.

Lindemann's Opposition to the two Motions to Dismiss contains similar errors. The Enterprise Opposition incorrectly cited Rodriguez for the same proposition as in the Strike Opposition. That Opposition also cites fictitious cases, misattributes quotes, provides incorrect citations for cases, and cites cases for propositions they do not stand for. While less severe, the Travelers Opposition also contains misattributed quotes and incorrect citations. These submissions plainly justify sanctions. See Mintvest Capital, LTD v. NYDIG Tr. Co., No. 25-CV-1019, 2025 WL 5256346, at *3-4 (D.P.R. June 23, 2025) (imposing sanctions for citing three fictitious cases, two cases for propositions for which they did not stand, and five cases for quotations they did not contain); Fuller, 2026 WL 1229142, at *1 (imposing sanctions where "several cases were cited for unsupported propositions; some quoted language could not be located in the cited sources; and other quotations contained inaccurate pincites"); Elizondo v. City of Laredo, No. 5:25-CV-50, 2025 WL 2071072, at *1 (S.D. Tex. July 23, 2025) (imposing sanctions for citing "four cases with wildly inaccurate citations—misstating case numbers, dates

of decisions, reporters, Westlaw citations, page numbers, and confusing the federal and state court systems"); Benjamin v. Costco Wholesale Corp., 779 F. Supp. 3d 341, 345 (E.D.N.Y. 2025) (imposing sanctions for three incorrect citations and two fake cases).

Although Lindemann alleges that this is an "isolated event" [Dkt. 92 at 6], it unequivocally is not. Citation errors were present throughout three different briefs, filed over several months. It is irrelevant that Lindemann has not admitted to using AI in the Travelers and Enterprise Oppositions. There is no rule against the use of AI in researching and drafting legal papers, but it must be utilized responsibly. The use of AI does not diminish an attorney's professional and ethical obligations under Rule 11. "An attorney who chooses to use such tools must ensure that every citation and quoted passage has been independently confirmed using reliable legal sources, and that any limitations of AI tools are fully understood and accounted for." Fuller, 2026 WL 1229142, at *2; Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC, No. 17-CV-81140, 2025 WL 1440351, at *4 (S.D. Fla. May 20, 2025) ("[C]lose and careful attorney supervision, fact-checking, and citation-checking are absolute necessities when utilizing AI or any of its subsets."). Here, whether AI was used or not, Lindemann did not confirm the truthfulness of his citations.[8] As a result, sanctions are appropriate.

Lindemann argues that sanctions are inappropriate because (1) all cited cases are real, (2) every legal proposition is legally sound, (3) he was candid with the Court, and (4) the errors reflected carelessness rather than bad faith. [Dkt. 135 at 2]. First, not all cases cited are real. For example, Lindemann cited a case with Dorchester Mutual Insurance Company as the plaintiff.

---

[8] Further, it is no excuse that Lindemann did not know AI could generate fake citations. See Mid Cent., 2025 WL 574234, at *1 (issuing sanctions where defense attorney did not know that AI was capable of generating fictitious cases and citations).

[Dkt. 97 at 19]. After conducting a wide search, including Westlaw, Lexis, and Bloomberg, this case does not appear to exist. Lindemann suggests that, because he provided citations associated with real cases, he was not citing fake cases. The effect is the same regardless of whether the citation directs the Court to a different, real case or is unconnected to any case. Either way, Lindemann cites invalid legal authority, often for propositions not found therein, and sometimes for propositions which are legally incorrect.

Second, Lindemann is incorrect that every proposition he stated is legally sound. As previously explained, Lindemann relied upon Rodriguez for incorrect legal propositions in two separate submissions to the Court. [Dkts. 51 at 2, 13, 14; 97 at 2, 5]. Third, Lindemann was not fully candid with the Court. In his initial withdrawal of the Strike Opposition, Lindemann provided no explanation for the withdrawal, let alone informed the Court that the Strike Opposition contained fictitious citations. As far as the Court is aware, the first time Lindemann admitted careless or negligent conduct was on April 11, 2026, in response to the Court's order to show cause. [Dkt. 135]. For five months after the Strike Opposition was filed, Lindemann obfuscated, claiming "an incorrect draft PDF of the opposition to the motion was inadvertently filed." [Dkt. 92 at 5]. Despite this explanation, it is noteworthy that Lindemann has never submitted the correct draft of the Strike Opposition.

Finally, bad faith is not required to impose sanctions under Rule 11 in this jurisdiction. Lancellotti v. Fay, 909 F.2d 15, 19 (1st Cir. 1990) ("While bad faith remains sanctionable, it is now not a sine qua non to a Rule 11 impost. Put bluntly, a pure heart no longer excuses an empty head."). A finding of bad faith is "a subjective inquiry" that evaluates whether a "party acted with an improper motive, such as an intent to deceive, harass, delay, or disrupt." Sanders v. Arseneault, No. 19-CV-12284, 2021 WL 982452, at *3 (D. Mass. Mar. 16, 2021) (citing Bad

Faith, BLACK'S LAW DICTIONARY (6th ed. 1990)). Some courts have found that a party acts in bad faith when they do not check the work of AI and, as a result, submit briefing containing misleading or fictitious citations. Mata, 678 F. Supp. 3d at 463 ("A false statement of knowledge can constitute subjective bad faith where the speaker 'knew that he had no such knowledge.'") (citation omitted); Benjamin, 779 F. Supp. 3d at 349-50 (finding subjective bad faith where attorney filed a sworn reply, drafted with AI, citing nonexistent cases she never read or cite-checked).

Although, "[b]y far, the majority of courts impose sanctions upon the offending lawyer for this sort of conduct," courts occasionally do not impose sanctions where the offending party has extraordinary life circumstances or was not directly responsible. Hall v. Acad. Charter Sch., No. 2:24-CV-08630, 2025 WL 2256653, at *5 (E.D.N.Y. Aug. 7, 2025) (declining sanctions where the offending attorney's spouse passed away near the time of submission); United States v. Cohen, 724 F. Supp. 3d 251, 258-59 (S.D.N.Y. 2024) (declining sanctions where the offending attorney relied upon another attorney's work). This is not one of those cases.

Lindemann admitted that he alone is responsible for the submission of fake citations to the Court. [Dkt. 135 at 2 n.1]. His explanation for these submissions is (1) illness and (2) his desire to submit the Strike Opposition before vacation. The Court is not persuaded by either explanation. Lindemann had two weeks to address the Enterprise Defendants' Motion to Strike but filed the Opposition less than five hours after the Motion to Strike was filed. Lindemann also returned from vacation a week before the Opposition was due. There was ample time for Lindemann to check his work or request an extension, if needed. As for Lindemann's illness during the Motion to Dismiss briefing, Lindemann requested and was granted an extension of time to oppose the Motions to Dismiss because of his illness. If Lindemann needed a further

extension, he could have requested one. He did not, and a temporary illness is no excuse for dereliction of Lindemann's professional obligations to the Court and his client.

Additionally, Lindemann's initial response to the Motion for Sanctions was not forthcoming. [See Dkt. 92]. In fact, Lindemann went so far as to suggest that sanctions could be imposed on the Enterprise Defendants, instead. [Id. at 8-10]. Further, both the Enterprise and Travelers Oppositions contain citation errors, even though they were submitted after the Enterprise Defendants emailed Lindemann about the errors in the Strike Opposition and after the Motion for Sanctions was filed. Lindemann's continued submission of briefing containing false or misleading citations, even after receiving notice, indicates that this is not an instance of mere carelessness. See ByoPlanet Int'l, LLC v. Johansson, 792 F. Supp. 3d 1341, 1354 (S.D. Fla. 2025) (finding bad faith where "despite being on notice that his use of AI resulted in hallucinated cases and quotations, [counsel] continued to make submissions to the Court using AI without checking the veracity of cases and citations submitted to the Court and his adversaries."). Instead, Lindemann has demonstrated a pattern of neglecting to confirm the accuracy of his submissions to the Court.

While mitigation efforts certainly "weigh[] in favor of a measured sanction," they do not excuse counsel's actions. Elizondo, 2025 WL 2071072, at *3 (imposing a $2,500 sanction and CLE course where counsel prohibited the future use of generative AI by their firm after submitting papers with AI generated cases); see Benjamin, 779 F. Supp. 3d at 351 (imposing sanctions where attorney promptly apologized and, on her own initiative, took CLE course to inform herself of the potential dangers of utilizing AI for legal work). The Court recognizes Lindemann's acknowledgement of the problem, though belated, and steps to educate himself on

the ethical use of AI in legal work. Nonetheless, these efforts do not detract from the need to deter Lindemann and other attorneys from irresponsibly using AI without confirming their work.

Because Lindemann admitted he was solely responsible for the filings, the Court does not impose sanctions upon local counsel. Still, local counsel is reminded of his ongoing obligations to assist and supervise pro hac counsel, including his obligation to ensure that pro hac counsel abides by the local rules. See Brown v. Philip Morris Inc., 291 F. Supp. 2d 3, 6 (D. Mass. 2003) ("The purpose of the [pro hac vice] rule is self-evident, namely, to allow out-of-state counsel to appear only with the support and supervision of a local attorney."); Obert v. Republic Western Insurance Co., 190 F. Supp. 2d 279, 298 (D.R.I. 2002) ("[P]ro hac vice counsel may only practice with the assistance of local counsel . . . [and] local counsel is responsible to the [c]ourt for the conduct of the case.").

**III. The Sanction**

Having found that sanctions are warranted here, the Court now turns to determining the appropriate sanctions. "Considerable discretion is vested in a district judge to decide whether to impose sanctions and what form they should take." Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1238 (1st Cir. 1991) (citing Lancellotti v. Fay, 909 F.2d 15, 19-20 (1st Cir. 1990)). The primary purpose of Rule 11 sanctions is deterrence. Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 247 (1st Cir. 2010) ("[T]he purpose of Rule 11 sanctions is to deter rather than to compensate."). And, sanctions must be "sufficient, but no greater than necessary, to accomplish the deterrent purpose of the Rule." Stefanoni v. L.F.I., Inc., No. 24-CV-12758, 2025 WL 2500034, at *17 (D. Mass. Mar. 10, 2025); see Fed. R. Civ. P. 11(c)(4) (providing that sanctions under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated").

Courts have imposed a range of sanctions for the submission of false or misleading citations. Common sanctions include (1) monetary penalties, Mata, 678 F. Supp. 3d at 466 (imposing a $5,000 penalty); Elizondo, 2025 WL 2071072, at *3 (imposing $2,500 fee); Mid Cent., 2025 WL 1511211, at *2 (imposing $6,000 penalty); (2) payment of the opposing parties' fees, see Ferris v. Amazon.com Servs., LLC, 778 F. Supp. 3d 879, 882 (N.D. Miss. 2025); (3) referral to the bar or disciplinary bodies, Mid Cent., 2025 WL 574234, at *5; United States v. Hayes, 763 F. Supp. 3d 1054, 1073 (E.D. Cal. 2025); (4) attendance of CLE courses, see Fuller, 2026 WL 1229142, at *3; (5) requiring written notification to the client, Gauthier v. Goodyear Tire & Rubber Co., No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024); (6) requiring written notification to judges incorrectly identified as having authored the fictitious cases cited, see Mata, 678 F. Supp. 3d at 466; (7) revoking pro hac vice admission, see Wadsworth, 348 F.R.D. at 498, and more drastic sanctions, including (8) dismissal of the action, see ByoPlanet Int'l, 792 F. Supp. 3d at 1357; Moore v. City of Del City, No. 25-6002, 2025 WL 3471341, at *3 (10th Cir. Dec. 3, 2025) (dismissing appeal in the alternative). Courts often impose a combination of sanctions. Versant Funding, 2025 WL 1440351, at *7 (payment of attorney's fees, attendance of CLE courses, and payment of a fine totaling $1,500, notifying plaintiff); Gauthier, 2024 WL 4882651, at *3 ($2,000 penalty, attendant of CLE courses, notifying plaintiff); Benjamin, 779 F. Supp. 3d at 351 (penalty and notice to plaintiff).

The Court has carefully considered the possible sanctions, paying particular attention to the need to deter similar conduct. Accordingly, the Court finds the following sanctions are appropriate:

- The Lindemann Law Firm is ordered to pay reasonable attorney's fees and costs incurred by the Enterprise Defendants in (a) replying to Plaintiff's Opposition to

the Motion to Strike, (b) filing the Motion for Sanctions and filing a Reply on the Motion for Sanctions, and (c) replying to Plaintiff's Opposition to their Motion to Dismiss. These fees and costs shall not exceed $10,000. The parties' counsel shall confer and attempt in good faith to determine and agree upon the reasonable attorney's fees and costs that were incurred by the Enterprise Defendants. The parties shall then file a Joint Notice on or before October 23, 2026, stating whether they have been able to agree upon the fees and costs to be paid, and if so, the specific amount agreed upon, and the payment schedule. The Court will then issue any further Order as deemed necessary. If the parties cannot agree on fees and costs, or a payment schedule, they shall file separate notices on or before October 23, 2026, stating the nature of the dispute over the fees and costs (whether it involves the time incurred, hourly rate, or other issues) and their respective positions. Then, the Court will determine the amount of the attorney's fees and costs to be paid.

- The Court revokes Attorney Lindemann's pro hac vice status. Attorney Dana shall remain Plaintiff's counsel. The Court will hold a Status Conference on November 9, 2026 at 11:00 AM to discuss the future steps for addressing the remaining claims and Defendants in this proceeding.

## IV. CONCLUSION

For the foregoing reasons, Enterprise Defendants' Motion for Sanctions [Dkt. 65] is **GRANTED** and the Court imposes sanctions on its own initiative pursuant to Federal Rule of Civil Procedure 11.

**SO ORDERED.**

Dated: September 25, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge